Case 2:05-cv-04713-JS-MLO Document 1 Filed 10/06/05 Page 1 of 15 PageID #: 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
U.S. IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
* OCT 06 2005
BROOKLYN OFFICE

---

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

   v.

FRED GOLD,
JOHN D. PARSON and
BRENDON P. MCDONALD,

        Defendants.

COMPLAINT

CV 05 4713

05 Civ. _____

JURY DEMANDED

SEYBERT, J.
ORENSTEIN, M.J.

---

Plaintiff United States Securities and Exchange Commission ("Commission") for its Complaint alleges:

### NATURE OF ACTION

1. This case involves the fraudulent misconduct by certain auditors formerly with Arthur Andersen, LLP ("Andersen") in connection with their audit of the financial statements of American Tissue, Inc. ("American Tissue") for the fiscal year ended September 30, 2000.

2. Defendants Fred Gold ("Gold"), John D. Parson ("Parson") and Brendon P. McDonald ("McDonald"), as members of the Andersen auditing team, knew or recklessly disregarded that American Tissue was falsely inflating its assets and earnings on American Tissue's fiscal 2000 financial statements so that American Tissue would be able to conceal its financial weakness and thereby fraudulently induce its lenders to continue to extend commercial credit and advances to American Tissue. The defendants issued and caused to be issued an unqualified audit report on

American Tissue's fiscal 2000 financial statements filed with the Commission as part of American Tissue's Form 10-K. In so doing, the defendants failed to exercise due professional care and skepticism required under Generally Accepted Accounting Standards ("GAAS"). The unqualified audit report falsely stated that the defendants conducted the audit in accordance with GAAS and that American Tissue's financial statements were presented in conformity with Generally Accepted Accounting Principles ("GAAP").

3. Upon learning that the defendants' audit of American Tissue for the fiscal year ended September 30, 2000 would be subject to a peer review by another auditing firm, each of the defendants falsified, back-dated and/or otherwise altered certain of the fiscal 2000 audit work papers for the American Tissue audit in order to conceal deficiencies in the defendants' flawed audit.

4. On the very day that American Tissue's false and fraudulent accounting was exposed, the defendants directed and arranged for immediate, unscheduled destruction and shredding of Andersen documents and e-mails relating to the defendants' flawed audit of American Tissue.

5. As detailed in this Complaint, defendants Gold, Parson and McDonald knew, or were reckless in not knowing, that American Tissue's fiscal 2000 financial statements failed to comply with GAAP and were otherwise false or misleading. As a result, the defendants violated, and aided and abetted the violations of, the antifraud and reporting provisions of the federal securities laws. Unless enjoined, defendants Gold, Parson and McDonald are likely to commit such

violations in the future. The Commission seeks a judgment permanently enjoining Gold, Parson and McDonald from further securities law violations and imposing civil monetary penalties.

## JURISDICTION AND VENUE

6. The Commission brings this action pursuant to Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)].

7. This Court has jurisdiction over this action pursuant to Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

8. Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, in connection with the acts, practices, and courses of conduct alleged herein, certain of which have occurred within this judicial district.

## DEFENDANTS

9. **Defendant Fred Gold**, 59, a resident of Woodbury, New York, is licensed as a Certified Public Accountant. He was a partner at the Melville, New York office of Andersen. He was Andersen's engagement partner responsible for the fiscal 2000 audit of American Tissue. He signed the auditors' report contained in American Tissue's fiscal 2000 annual report in its Form 10-K, which was filed with the Commission.

10. **Defendant John D. Parson**, 35, a resident of Old Bethpage, New York, is licensed as a Certified Public Accountant. He was an audit manager at the New York, New York office of Andersen. He worked on the fiscal 2000 audit of American Tissue under the direction and supervision of defendant Gold.

3

11. **Defendant Brendon P. McDonald**, 29, a resident of Center Moriches, New York, is licensed as a Certified Public Accountant. He was an experienced senior accountant at the Melville, New York office of Andersen. He worked on the fiscal 2000 audit of American Tissue under the direction and supervision of defendants Gold and Parson.

## RELATED ENTITES

12. Andersen was a partnership that performed, among other things, accounting and consulting services for clients that operated businesses throughout the United States and the world. Andersen was one of the largest accounting firms in the United States. Andersen had its headquarters in Chicago, Illinois, and maintained offices throughout the world, including in Melville, New York.

13. American Tissue, a Delaware corporation headquartered in Hauppauge, New York, was a manufacturer of tissue and paper products with paper mills and converting facilities located throughout the United States and Mexico. American Tissue became a reporting company under Section 15(d) of the Exchange Act on February 7, 2000, when it offered and sold $165 million of senior secured notes to investors. On September 10, 2001, American Tissue filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code. On April 22, 2004, the Bankruptcy Court converted the proceeding into one for liquidation under Chapter 7. *In re American Tissue, Inc.*, No. 01-10370 (Ch. 7) (Bankr. D. Del.). The Chapter 7 proceeding is currently pending.

## THE FRAUDULENT SCHEME

*American Tissue's False and Fraudulent Accounting*

14. During its fiscal year 2000, during which American Tissue offered and sold $165 million of securities to investors, American Tissue made false entries in its books and records to fraudulently and materially inflate reported assets and earnings. American Tissue improperly capitalized previously expensed supplies and overvalued finished goods inventory.

15. In August 2000, American Tissue fraudulently reclassified $15.6 million of previously expensed supplies – plant supplies which were typically consumed in the normal operation of the business – as an asset designated as "supplies inventory." By capitalizing the supplies, in violation of GAAP and its own accounting policies, American Tissue improperly reduced American Tissue's reported expenses, thereby increasing its reported income. These actions increased American Tissue's purported net income for fiscal 2000 from approximately $8.5 million to approximately $24.1 million and thereby avoided violation and default of financial covenants set forth in American Tissue's loan agreements with its lenders.

16. American Tissue's fiscal 2000 inventory of finished goods was also overvalued. According to GAAP, inventory is required to be valued at the lower of its cost or market value. Market value may not exceed the "net realizable value" of the inventory, that is, the estimated selling price of the inventory less the costs of disposal. American Tissue's finished goods inventory was carried at values higher than actual selling prices and not marked down to net realizable value at fiscal year-end September 30, 2000. As a result, American Tissue's finished goods inventory, reported in its fiscal year 2000 financial statements at $72.6 million, was

overvalued by at least $12.5 million, causing a corresponding overstatement of net income for that year.

17. In sum, as a result of its overstatement of finished goods inventory and its improper capitalization of supplies, American Tissue's reported pre-tax income of $24.5 million for its fiscal year ended September 30, 2000 was overstated by at least $28.1 million.

18. On December 29, 2000, American Tissue filed its fiscal 2000 annual report in its Form 10-K, which contained the foregoing materially false and misleading statements, with the Commission.

19. In late August, 2001, another auditing firm American Tissue had retained to help improve operations advised the senior management at American Tissue that American Tissue had, among other things, overvalued inventories.

### ROLE OF THE ANDERSEN DEFENDANTS

*Purported Audit of American Tissue's Supplies Inventory*

20. Defendants Gold and Parson supervised, reviewed, and approved Andersen's audit of American Tissue's fiscal year 2000 financial statements. Defendant McDonald supervised and participated in performing Andersen's audit of American Tissue's fiscal year 2000 financial statements.

21. The audit of the supplies inventory showed that American Tissue's inventory had increased dramatically over fiscal year 1999, from $3.2 million on September 30, 1999 to $21.3 million on September 30, 2000. Approximately $16 million of the increase occurred in the fourth quarter of fiscal year 2000.

6

22. Defendants Gold, Parson and McDonald failed to adequately verify American Tissue's false representation that an August 2000 increase in supplies inventory represented a reclassification of supplies previously classified in other inventory accounts.

23. Defendants Gold, Parson and McDonald failed to verify whether, in fact, the supplies inventory had previously been classified in other inventory accounts. Defendants Gold, Parson and McDonald failed to obtain sufficient accounting documentation in support of the purported reclassifications. Rather, defendant McDonald, with the concurrence of defendants Gold and Parson, wrote in the work papers that no further work was required.

24. In fact, the dramatic August 2000 increase represented a capitalization of items previously recorded as expenses and not a reclassification of supplies that had previously been classified in other inventory accounts.

25. GAAS requires that due professional care is to be exercised in the planning and performance of the audit and the preparation of the audit report. As part of due professional care, the auditor must exercise professional skepticism, which includes a critical assessment of audit evidence.

26. Defendants Gold, Parson and McDonald failed to exercise due professional care and skepticism concerning the purported reclassifications. Had the defendants exercised such care and skepticism, as required by GAAS, they would have discovered that there was no such inventory reclassification. Rather, fraudulent entries were recorded in August 2000, shortly before American Tissue's fiscal year-end, which improperly reduced expenses by $15.6 million and classified those expenses as assets.

27. Nevertheless, defendants Gold, Parson and McDonald issued an unqualified audit report on American Tissue's fiscal 2000 financial statements without due professional care and skepticism.

28. Defendants Gold, Parson and McDonald knew, or were reckless in not knowing, that American Tissue had improperly reduced expenses by $15.6 million and classified those expenses as assets.

*Purported Audit of American Tissue's Finished Goods Inventory*

29. Defendants Gold and Parson supervised, reviewed, and approved Andersen's audit work for American Tissue's fiscal year 2000 finished goods inventory. Defendant McDonald supervised and participated in performing Andersen's audit work for American Tissue's fiscal year 2000 finished goods inventory.

30. To determine whether American Tissue had valued its finished goods inventory at the lower of cost or market as required by GAAP, an Andersen senior accountant, under defendant McDonald's supervision and defendants Gold's and Parson's review, performed a "net realizable value" test. The net realizable value test compared the inventory cost of selected items in the finished goods inventory to the items' selling price to determine whether the selling price or market value exceeded the cost.

31. Thirty-seven items were randomly selected for testing. Under Andersen's policies, the tolerable error rate for this test was five percent. The number of exceptions, therefore, could not exceed five percent of the number of items in the sample. An exception consisted of an instance

where an item's cost exceeded its selling price. If the error rate for the testing exceeded five percent, Andersen's policies required further work, including additional testing.

32. Defendants Gold, Parson and McDonald concluded that the thirty-seven item sample yielded two exceptions. In fact, the defendants knew or recklessly disregarded that there were six items where the inventory cost exceeded the selling price. The defendants' testing therefore yielded an error rate exceeding Andersen's tolerable error rate of five percent.

33. Defendant Gold, in fact, knew that American Tissue's finished goods selling prices were below their inventory cost, thereby resulting in a loss for American Tissue.

34. The net realizable value test also used unit costs which had not been updated for several years, resulting in a total finished goods inventory value of $78.4 million. Had defendants Gold, Parson and McDonald exercised appropriate due professional care and skepticism required by GAAS and adjusted the outdated unit costs used in the testing with the available up-to-date unit costs, there would have been 20 exceptions for the 37 items tested for a 54% error rate.

35. Defendants Gold, Parson and McDonald failed to conduct the required additional testing. Rather, defendant McDonald, with the concurrence of defendants Gold and Parson, wrote in the work papers that no further work was necessary.

36. In addition, defendants Gold, Parson and McDonald failed to extrapolate the results of the net realizable value test to the overall finished goods inventory as required by GAAS and Andersen's own auditing policy. In fact, defendant Parson acknowledged in a "to do list," drafted after the audit and the filing of American Tissue's Form 10-K with the Commission, that an extrapolation of the results was necessary.

9

37. Defendants Gold, Parson and McDonald knew, or were reckless in not knowing, that American Tissue's finished goods inventory was overstated by at least $12.5 million.

*Defendants Gold, Parson and McDonald Falsified, Back-Dated and Otherwise Altered Audit Work Papers*

38. In or around July 2001, after the issuance of an unqualified audit report on American Tissue's fiscal 2000 financial statements, defendants Gold, Parson and McDonald learned that the American Tissue audit for fiscal year 2000 had been selected for a peer review by another accounting firm. Aware of the deficiencies in the defendants' flawed audit of American Tissue, defendants Gold, Parson and McDonald attempted to conceal the deficiencies of their work.

39. In or around July 2001, the defendants arranged and altered the audit work papers to make it falsely appear that American Tissue had passed the net realizable value test for the audit of the finished goods inventory. Defendant Gold directed defendant McDonald to insert the following back-dated statement into the work papers so that it would appear that no extrapolation of the results was required at the first instance: "[T]hese items have been discontinued and the company has lowered its prices in an attempt to sell off remaining inventory levels. As these items are not indicative of the inventory population, the results of this test should not be extrapolated to the population. As this is reasonable, p/f/w [pass further work]."

40. In or around July 2001, defendant Gold directed defendant McDonald to add a note to the net realizable value work papers, falsely stating that the up-to-date (year 2000) unit costs were used in the testing.

41. The defendants had also failed to conduct a "going concern" assessment, which was required under the circumstances by GAAS, for American Tissue. To hide their failure to conduct a "going concern" assessment at the time of the audit, defendant Parson created and backdated, at defendant Gold's direction, to December 2000 documents which purported to represent a going concern evaluation that was never performed.

*Defendant Gold Directed and Defendants Parson and McDonald Arranged
For Destruction and Shredding of Documents and E-Mails*

42. In August 2001, as a result of its cash flow problems, American Tissue hired another auditing firm, at the request of American Tissue's primary lender, to assist in restructuring American Tissue's operations and in improving its cash flow. In the course of examining American Tissue's books and records, that auditing firm discovered accounting irregularities involving, among other things, the valuation of American Tissue's inventories.

43. On or about September 3, 2001 (Labor Day), American Tissue's management, at the request of the above-described auditing firm, met with the defendants and told them of American Tissue's inventory overvaluations.

44. After that meeting, still on September 3, 2001, defendant Gold instructed defendants Parson and McDonald to arrange for the immediate, unscheduled destruction and shredding of all Andersen documents and e-mails that were not part of the "official" American Tissue work paper files.

45. In response, defendant McDonald gave two instructions to members of Andersen's American Tissue audit staff on September 3, 2001. Initially, the audit staff was instructed to save everything from the hard drives on their laptop computers to a disk and send the disk to defendant McDonald's house. Shortly thereafter, the staff was instructed to delete everything related to American Tissue from the hard drives on their laptop computers.

46. On or about September 4, 2001, defendant McDonald instructed Andersen's American Tissue audit staff to gather all American Tissue related documents for shredding, other than the "official" work paper file.

47. On or about September 4, 2001, at the request of Andersen, an outside shredding company made an unscheduled visit to pick up and shred American Tissue audit documents and e-mails that were not part of the "official" American Tissue work paper files.

*The False Audit Report*

48. For the reasons stated above, defendants Gold, Parson and McDonald knew, or were reckless in not knowing, that Andersen's audit report which stated that the audit had been conducted in accordance with GAAS and that American Tissue's financial statements had been prepared in conformity with GAAP was false.

12

## FIRST CLAIM

### (Securities Fraud Violations)

### Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 Thereunder

49. The Commission repeats and incorporates by reference paragraphs 1 through 48 of this Complaint.

50. By virtue of the foregoing conduct, defendants Gold, Parson and McDonald, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, or of any facility of any national securities exchange, knowingly or recklessly: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated or would have operated as a fraud or deceit upon any person, in violation of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder.

## SECOND CLAIM

### (Reporting Violations)

### Aiding and Abetting Violations of Section 15(d) of the Securities Exchange Act of 1934 and Rules 12b-20 and 15d-1 Thereunder

51. The Commission repeats and incorporates by reference paragraphs 1 through 50 of this Complaint.

52. American Tissue filed with the Commission an annual report on Form 10-K for its fiscal year ended September 30, 2000 which contained untrue statements of material fact and omitted to state material facts required to be stated therein or necessary to make the statements made not misleading, concerning, among other things, American Tissue's inventory, expenses and net income.

53. By reason of the foregoing, American Tissue violated Section 15(d) of the Exchange Act [15 U.S.C. §78m(a)] and Rules 12b-20 and 15d-1 promulgated thereunder [17 C.F.R §§ 240.12b-20 and 240.15d-1].

54. Defendants Gold, Parson and McDonald each knowingly and substantially participated in the inclusion of the above described false and misleading statements in American Tissue's Form 10-K report for the fiscal year ended 2000.

55. By reason of the foregoing, defendants Gold, Parson and McDonald aided and abetted American Tissue's violations of Section 15(d) of the Exchange Act [15 U.S.C. §78o(d)] and Rules 12b-20 and 15d-1 promulgated thereunder [17 C.F.R §§ 240.12b-20 and 240.15d-1].

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Commission respectfully requests that this Court:

(a) permanently restrain and enjoin defendants Fred Gold, John D. Parson and Brendon P. McDonald from violating Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and from aiding and abetting violations of Section 15(d) and of the Exchange Act and Rules 12b-20 and 15d-1 thereunder;

14

b) impose civil monetary penalties against defendants Gold, Parson and McDonald pursuant to Section 21(d) of the Exchange Act; and

c) grant such other and further relief as this Court may deem just and appropriate.

Respectfully submitted,

Dated: October 6, 2005
Washington, D.C.

_____
Robert B. Blackburn (RB 1545)
United States Securities and
Exchange Commission
3 World Financial Center, Room 4300
New York, N.Y. 10281-1022
(212) 336-1050
blackburnr@sec.gov
   Local Counsel

_____
Richard Hong (RH 4939)
Paul R. Berger
Mark Kreitman
J. David Fielder
David B. Witherspoon

Counsel for the Plaintiff
United States Securities and
Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4010-A
(202) 551-4431 (Hong)
(202) 772-9244 (Fax)
hongr@sec.gov